IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAN CAPITAL ASSET SERVICING INC. f/k/a NEWLOGIC BUSINESS LOANS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:20-cv-03215-M-BT |
| BANA FOOD INC. d/b/a BANA FOOD INC. and NOORDIN ALLAUDIN a/k/a NOORDIN A. ALLUDIN a/k/a ALLAUDIN NOORDIN ALI, | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Bana Food, Inc. (Bana) and Noordin A. Allaudin's Motion to Compel Arbitration and to Dismiss. Defs.' Mot. (ECF No. 20). For the reasons explained in these Findings, Conclusions, and Recommendation, the Court should GRANT the Motion and DISMISS this civil action because all of Plaintiff's claims are subject to arbitration.

**Background**

On May 8, 2019, Bana entered into a Business Loan Agreement (the "Agreement") with WebBank (the "Lender") and obtained a commercial loan from the Lender. *See* Pl.'s Compl. (ECF No. 1); *Bus. Loan Agreement*, Pl.'s Ex. 1, at 1

1

(ECF No. 1-1). As part of the Agreement, Allaudin personally guaranteed payment of the loan. *See id.* at 12.

Section 11 of the Agreement allows the Lender to "assign . . . or otherwise transfer or delegate this Agreement or any of [the Lender's] rights or obligations . . . to any party (each, an 'Assignee') without notifying [Bana] or obtaining [Bana's] consent." *Id.* at 8 ¶ 11. And on May 15, 2019, the Lender assigned the Agreement to Plaintiff Can Capital Asset Servicing, Inc. (Can Capital). *See Confirmation of Assignment of Loan*, Pl.'s Ex. 2 (ECF No 1-2).

The second page of the Agreement provides a summary of the Agreement's "Key Terms & Conditions." *See* Pl.'s Ex. 1, at 2. The first sentence on the second page "gives [Bana] and [the Lender] the right to require any dispute to be resolved through BINDING INDIVIDUAL ARBITRATION rather than in court." *See id.* (emphasis in original). Section 19 of the Agreement contains an "arbitration agreement" that states:

> You or we each may elect to resolve any and all claims and disputes relating in any way to this Agreement or our dealings with one another ("**Claims**"), except for Claims concerning the validity, scope or enforceability of this Arbitration Agreement, through **BINDING INDIVIDUAL ARBITRATION**. This Arbitration Agreement is made with respect to transactions involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "**FAA**"), and not by state law. **SIGNING PRINCIPAL AGREES THAT *SECTION 19* (INCLUDING *SECTIONS 19.1 – 19.6*) SHALL APPLY TO HIM/HER IN THE SAME MANNER AS BANA**.

*Id.* at 10 ¶ 19 (emphasis in original). In the arbitration agreement, "the word[] 'we' . . . refer[s] to Lender and its successors or assigns, including any 'Assignee.'" *See id.* at 2 ¶ 1 (emphasis omitted from original).

The Personal Guaranty also repeats the language of the arbitration agreement. In the Personal Guaranty, Allaudin:

> ACKNOWLEDGE[S] and AGREE[S] THAT THIS GUARANTY IS GOVERNED BY THE ARBITRATION AGREEMENT SET FORTH ABOVE IN *SECTION 19* . . . WITH RESPECT TO ANY LEGAL ACTION OR PROCEEDING OF ANY KIND ARISING OUT OF, RELATED TO, IN CONNECTION WITH OR INCIDENT TO THIS GUARANTY . . . .

*Id.* at 12 (emphasis in original).

In its Complaint filed on October 21, 2020, Can Capital alleges Bana breached the Agreement when Bana stopped making payments under the terms of the Agreement, and accordingly, Defendants Bana and Allaudin are jointly liable for Bana's breach. *See* Pl.'s Compl. 3 ¶ 12; *see also Payment History*, Pl.'s Ex. 3 (ECF No. 1-3). Specifically, Can Capital alleged three causes of action related to the Agreement and the business dealings between the parties: breach of contract, breach of personal guaranty, and foreclosure of security interests in certain personal property created by a security agreement within the Agreement. Pl.'s Compl. 4-6 ¶¶ 16-24.

Defendants responded to Plaintiff's Complaint on January 12, 2021. Defs.' Answer & Am. Answer (ECF Nos. 15, 16). In their Answer and Amended Answer, Defendants alleged as an affirmative defense that "any and all claims asserted in

the Complaint is [sic] subject to arbitration." Def.'s Answer 4 ¶ 35; Def.'s Am. Answer 4 ¶ 35. Then, Defendants moved to dismiss Can Capital's Complaint and compel arbitration based on the arbitration agreement. *See* Defs.' Mot.; Pl.'s Ex. 3. Can Capital failed to respond to Defendants' Motion, and the time to do so has expired. Therefore, the Court considers Defendants' Motion without the benefit of a response from Can Capital.

## Legal Standards

Defendants move to dismiss Can Capital's Complaint and compel arbitration. American courts adopted from the English common law "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). Congress passed the Federal Arbitration Act (FAA) to reverse this hostility and "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67.

Parties aggrieved by another party's failure to arbitrate a claim pursuant to a written arbitration agreement may petition a federal court "for an order directing that such arbitration proceed in a manner provided for in such agreement." *Id.* (quoting 9 U.S.C. § 4). "Once the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, it shall order arbitration." *Gezu v. Charter Commc'ns*, 2021 WL 419741, at *4 (N.D. Tex. Jan. 7, 2021) (Rutherford, J.) (internal quotation marks omitted) (quoting *Floyd v. Kelly Servs., Inc.*, 2019 WL 4452309, at *2 (N.D. Tex. Aug. 30, 2019) (Rutherford, J.) (citing *Rent-A-Center*, 561 U.S. at 67 (citing 9 U.S.C. § 4))).

"Courts perform a two-step inquiry when considering whether to compel arbitration." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, the court determines "whether the parties agreed to arbitrate the dispute," *Floyd*, 2019 WL 4452309 at *2, as "[a]rbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). This inquiry involves answering two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in questions falls within the scope of the arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). The strong federal policy favoring arbitration does not apply "to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* Second, the court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Floyd*, 2019 WL 4452309 at *2 (internal quotation marks omitted) (quoting *R.M. Perez*

5

*& Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). Because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## Analysis

I. Plaintiff's claims are subject to arbitration.

    *a. A valid arbitration agreement exists.*

When a party seeks to compel arbitration based on a contract, courts must determine whether a contract exists between the parties. *See Arnold v. HomeAway Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). Because this is a question of contract formation, the Court applies "ordinary state-law principles that govern the formation of contracts." *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2008) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The Agreement at issue contains a choice of law provision. Pl.'s Ex. 1, at 10 ¶ 16. The parties agreed "THE VALIDITY OF THIS AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES . . . AND ENFORCEMENT OF THE RIGHTS . . . SHALL BE GOVERNED BY AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF **UTAH**." *Id.* (emphasis in original).

6

Therefore, the Court considers whether the arbitration agreement is a valid contract under Utah law.

Under Utah law, formation of a contract requires an offer, an acceptance, and consideration. *Cai v. Huntsman Corp.*, 810 F. App'x 639, 642 (10th Cir. 2020) (interpreting Utah law). For an offer to be one that would create a valid and binding contract, its terms must be definite and unambiguous. *Id.* And the obligations of the parties must be set forth with sufficient definiteness that the contract can be performed. *Id.*

Here, the arbitration agreement, standing on its own, is a valid contract consisting of an offer, an acceptance, and consideration. *See, e.g.*, *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d 1256, 1265 (D. Utah 2014). The Lender offered Bana a loan in exchange for its agreement to certain terms. *See generally* Pl.'s Ex. 1. The arbitration agreement is included among those terms and constitutes an offer. *See id.* at 10 ¶ 19. The consideration that accompanied the offer was the Lender's loan to Bana. *See generally id.* Bana accepted the Lender's offer when Bana signed the agreement. The Lender performed on the Agreement's terms by providing a loan to Bana. *See generally* Pl.'s Compl. Hence, a valid contract was formed. Having entered into the Agreement with Bana, the Lender accepted the benefit of the bargain. The Lender assigned its rights and obligations to Can Capital. *See* Pl.'s Ex. 2. Having entered into an assignment of rights and obligations, Can Capital accepted the Lender's rights and obligations under the Agreement. And Can

7

Capital cannot now excuse itself and escape the requirements of the Agreement, including Bana's right to arbitrate if applicable.

Additionally, the arbitration agreement's terms are unambiguous. The Agreement references its arbitration agreement in the summary of the "Key Terms & Conditions" and personal guaranty. *See* Pl.'s Ex. 1, at 2, 12. In addition, the arbitration agreement was introduced by the caption "**ARBITRATION**." *Id.* at 10 ¶ 19 (emphasis in original). The caption alone signaled that arbitration was a key term of the agreement; it was conspicuous. The Agreement also permits the Lender to assign the agreement with or without Bana's consent, and the Lender validly assigned its interests and rights pursuant to the Agreement to Can Capital on May 15, 2019. *See generally id.*; *see* Pl.'s Ex. 2.

Furthermore, Can Capital failed to respond to Defendants' arguments regarding the enforceability of the arbitration provision and, therefore, did not challenge the validity of the Agreement or the arbitration agreement that Can Capital provided as an exhibit to its Complaint. *See* Pl.'s Compl. 4 ¶ 15. To the contrary, Can Capital asks this Court to enforce the Agreement in its entirety, which includes the arbitration agreement. *See generally* Pl.'s Compl.; *see also generally* Pl.'s Ex. 1. Accordingly, the Court finds that the parties executed a valid arbitration agreement and it should apply to Can Capital's claims if applicable.

*b. All Can Capital's claims are within the arbitration agreement's scope.*

The causes of action asserted by Can Capital against Defendants fall within the scope of the Agreement because the arbitration agreement is sufficiently broad.

8

The arbitration agreement's broad, catch-all language allows the arbitration of "any and all claims and disputes *relating in any way to this Agreement.*" *See* Pl.'s Ex. 1, at 10 ¶ 19 (emphasis added). Specifically, Can Capital alleges breach of the Agreement, breach of a personal guaranty of the Agreement, and foreclosure of Can Capital's collateral security agreement within the Agreement. All of these claims fall within the scope of the arbitration agreement because they relate directly to the Agreement. *See* Pl.'s Compl. 4-6 ¶¶ 16-23. The language in the arbitration clause is identical or sufficiently similar to those in federal cases in which courts have found that the arbitration agreement at issue encompassed the dispute. *See, e.g.*, *Gezu*, 2021 WL 419741, at *1; *Floyd*, 2019 WL 4452309, at *4. Moreover, Can Capital failed to provide the Court with any argument that any of Can Capital's claims fall outside of the plain and unambiguous language of the parties' valid and enforceable arbitration agreement. Accordingly, the Court finds that all Can Capital's asserted claims fall within the arbitration agreement's scope.

  *c. Policy supports arbitration.*

  The FAA reflects a national policy favoring arbitration. *Oden v. Infosys Ltd.*, 2018 WL 4627099, at *2 (N.D. Tex. Aug. 31, 2018) (Rutherford, J.) (citing *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 543 (5th Cir. 2016)), *rec. adopted*, 2018 WL 4615997 (N.D. Tex. Sept. 25, 2018). Moreover, Can Capital failed to respond to Defendants' Motion and therefore failed to raise any issue as to whether any other federal statute or policy renders Can Capital's claims nonarbitrable.

9

II. <u>Dismissal is proper because all Plaintiff's claims are subject to arbitration</u>.

In their Motion, Defendants ask the Court to dismiss the case in its entirety with prejudice if the Court finds that this dispute should be arbitrated. *See* Defs.' Mot. 5-6. When a court finds a dispute is subject to mandatory arbitration procedures, a court may dismiss the action with prejudice when "*all* of the issues raised in the district court must be submitted to arbitration." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015) (emphasis in original) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits by the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law;" therefore, dismissal with prejudice is warranted. *See Alford*, 975 F.2d at 1164. As discussed above, all Can Capital's claims against Defendants are within the arbitration agreement's scope and will be resolved by arbitration. Accordingly, the Court should dismiss this action with prejudice.

## Recommendation

The Court should GRANT the Defendants' Motion to Compel Arbitration and to Dismiss, (ECF No. 20), and DISMISS this action with prejudice because all of Plaintiff's claims must be submitted to arbitration.

**SO RECOMMENDED.**

October 29, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).